**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| **EMERGENCY RECOVERY, INC., SOLATIUM HEALTHCARE, LLC**, *Plaintiffs*, <br> v. <br> **BRYAN HUFNAGLE, JOSEPH KING**, *Defendants*. | Case No. 8:19-cv-329 <br><br> Hon. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Emergency Recovery, Inc. ("ERI") and Solatium Healthcare, LLC ("Solatium"), for their complaint against Defendants Bryan Hufnagle and Joseph King, state:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege breaches of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq. and the Court has supplemental jurisdiction of the remaining claims, which are so closely related to the DTSA claims as to form part of the same case or controversy under Article III.

2. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Florida.

3. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Plaintiffs' principle place of business is within this judicial district and Defendants reside within the judicial district.

### THE PARTIES

4. Plaintiff, Emergency Recovery, Inc., is a Florida corporation with its principal place of business in Coconut Creek, Florida.

5. Plaintiff Solatium Healthcare, LLC is a Florida limited liability company with its principal place of business in Coconut Creek, Florida.

6. ERI and Solatium are engaged in the business of assisting hospitals and other healthcare providers in recovering their outstanding bills by identifying and pursuing third-party liability claims.

7. Defendant Bryan Hufnagle is an individual residing in Tampa, Florida.

8. Defendant Joseph King is an individual residing in Tampa, Florida.

## FACTUAL BACKGROUND

9. ERI and Solatium provide third-party liability identification and collection services to hospitals and other healthcare providers.

10. In many states, including Florida, New Jersey, and Kentucky and other states, the law requires third-party liability benefits, such as Personal Injury Protection (PIP) benefits, be provided by auto-insurers. Both the law and healthcare providers' contracts with healthcare insurers require that the healthcare providers bill third-party liability providers first.

11. In many cases, it is difficult for healthcare providers to identify whether third-party liability exists with respect to specific patients.

12. ERI and Solatium specialize in identifying and billing potential third-party liability providers.

13. ERI and Solatium use confidential and proprietary methods to identify potential third-party liability from healthcare providers' lists of patients. These methods include complex algorithms and databases used to match patients to potential third-party recovery sources. These methods are proprietary and constitute the Trade Secrets of ERI and Solatium (the "Trade Secrets").

14. Plaintiffs have spent more than 10 years customizing databases and writing code to be able to identify the information we need to identify third-party liability coverage.

15. Plaintiffs acquire and combine data from multiple sources and have created software that utilizes Plaintiffs' own metrics based on specialized knowledge and experience to identify sources of third-party liability coverage.

16. Plaintiffs are the only companies in healthcare that perform this function in this proprietary way.

17. ERI and Solatium utilize extensive measures to keep the information and techniques comprising the Trade Secrets a secret. These steps included:

   a. Restricting physical access to its facility where the Trade Secrets are stored;
   b. Requiring key-FOB entry to its facility;
   c. Password protecting the Trade Secrets in digital form;
   d. Maintaining records of individuals who entered its facility;
   e. Requiring its employees to sign confidentiality and non-disclosure agreements;
   f. Holding regular staff meetings to reinforce and remind its employees of the confidential and trade secret nature of the Trade Secrets;
   g. Requiring customers to execute non-disclosure agreements;
   h. Requiring its employees to undergo HIPAA training; and
   i. Requiring customers to sign confidentiality agreements.

18. Plaintiffs' efforts to maintain the secrecy of its Trade Secrets were reasonable under the circumstances.

19. The Trade Secrets and confidential and proprietary information, and the misappropriation alleged below, have a substantial economic effect on interstate commerce, as ERI and Solatium provide their services in across state lines, identifying and billing third-party liability providers across the country.

20. On August 18, 2017, ERI and Hufnagle entered into an employment agreement, a copy of which is attached as Exhibit A.

21. Pursuant to the employment agreement, Hufnagle was to serve as ERI's Chief Operating Officer.

22. The employment agreement required Hufnagle to perform such services consistent with the title of Chief Operating Officer and as assigned by the President or Board of Directors.

23. On August 18, 2017, ERI and King entered into an employment agreement, a copy of which is attached as Exhibit B.

24. Pursuant to the employment agreement, King was to serve as ERI's SVP of Operations.

25. The employment agreement required King to perform such services consistent with the title of SVP of Operations and as assigned by the President or Board of Directors.

26. On August 1, 2018, Hufnagle and Solatium entered into an Employment agreement, a copy of which is attached as Exhibit C.

27. Pursuant to the employment agreement, Hufnagle was to serve as ERI's Chief Operating Officer.

28. The employment agreement required Hufnagle to perform such services consistent with the title of Chief Operating Officer and as assigned by the President or Board of Directors.

29. On October 22, 2018, King and Solatium entered into an Employment agreement, a copy of which is attached as Exhibit D. (Collectively, Exhibits A, B, C & D are referred to as the "Employment Agreements").

30. Pursuant to the employment agreement with ERI, King was to serve as ERI's Senior Vice President of Operations.

31. The agreement required King to perform such services consistent with the title of Senior Vice President of Operations and as assigned by the President or Board of Directors.

32. Pursuant to their Employment Agreements, Defendants Hufnagle and King acknowledged that they would maintain an intimate knowledge of Plaintiffs' Trade Secrets and other confidential matters.

33. Pursuant to the Employment Agreements, Defendants Hufnagle and King acknowledged that the services offered by Plaintiffs were special, unique and extraordinary.

34. Pursuant to the Employment Agreements, Defendants Hufnagle and King agreed that, during their employment and after, they would not divulge, disclose or communicate to any person, firm or corporation any information relating to the business affairs of Solatium or ERI which is confidential, proprietary, or not in the public domain.

35. Pursuant to the Employment Agreements, Defendants agreed that Plaintiffs would be entitled to injunctive relieve to prevent Plaintiffs from disclosing its confidential and proprietary information.

36. ERI and Solatium discovered that Hufnagle and King have been failing to perform their employment duties pursuant to the Employment Agreements.

37. As a result, ERI and Solatium terminated the employment of Hufnagle and King on January 16, 2019.

38. As a result of Hufnagle and King failing perform their employment duties, misappropriating Trade Secrets, and disclosing confidential information, ERI and Solatium have suffered substantial harm.

39. Plaintiffs have lost customers, including but not limited to Horizon Blue Cross, as a result of Defendants' breaches of the Employment Agreements and misappropriation of Trade Secrets.

40. On or about January 7, 2019, Hufnagle disclosed Trade Secrets to Horizon Blue Cross, including but not limited to Plaintiffs' proprietary database and methods.

41. As a result of the beach of Defendants' breach of the Employment Agreements and misappropriation of Trade Secrets, several of Solatium and ERI's long-term customers have ceased to do business with ERI and Solatium, including Horizon Blue Cross.

42. As a result, ERI and Solatium have failed to turn a profit during for the first time in their histories.

43. Following the termination of Defendants' employment, Defendants maintained possession of their company laptop for approximately one week.

44. During this time, Defendants' had access to Plaintiffs' Trade Secrets and the ability to copy and retain the Trade Secrets for their own use.

45. Following the termination of their employment, Defendants interfered and attempted to interfere with Plaintiffs' business, including, among other things, contacting Plaintiffs' client Horizon Blue Cross and told it that he their employment has been terminated and that Horizon Blue Cross should not do business with Plaintiffs.

**FIRST COUNT**
(MISAPPROPRIATION OF TRADE SECRETS—DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, et seq.; AND FLORIDA UNIFORM TRADE SECRETS ACT

46. Plaintiffs incorporate the above paragraphs by reference.

47. Plaintiffs provide third-party identification and billing services throughout the United States.

48. These services are used in interstate commerce.

49. Plaintiffs are the owners of the Trade Secrets.

50. Plaintiffs took reasonable steps to maintain the secrecy of its Trade Secrets.

51. The Trade Secrets had independent economic value as they were not generally known to other persons or businesses and could not be ascertained through proper means.

52. Prior to misappropriation, the Trade Secrets had been developed over a period of ten years. No competitors could replicate or reverse engineer the Trade Secrets.

53. Plaintiffs entered into Employment Agreements with Defendants that required them to safeguard the secrecy of the Trade Secrets and other proprietary and confidential information.

54. Throughout the course of Defendants' employment, Defendants had access and did access the Trade Secrets.

55. Defendants acquired knowledge of the Trade Secrets under circumstances giving rise to an express duty to maintain the secrecy of the Trade Secrets and to limit the use or disclosure of the Trade Secrets.

56. Defendants knew that Plaintiffs considered the methods, processes, procedures, and techniques comprising the Trade Secrets to be Trade Secrets.

57. Without Plaintiffs' express or implied consent, Defendants disclosed the Trade Secrets as set forth above.

58. At the time of Defendants' disclosure, Defendants knew that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets and to limit the use of the Trade Secrets.

59. Defendants knew their disclosures of Plaintiffs' Trade Secrets was in contravention of its duty to maintain secrecy.

60. Defendants misappropriated Plaintiffs' Trade Secrets by using and disclosing Plaintiffs' Trade Secrets in contravention of its duty to maintain secrecy.

61. Defendants also misappropriated Plaintiffs' Trade Secrets by its acquisition, use, and disclosure of the Trade Secrets through improper means.

62. Defendants improper means include: (1) misrepresenting to Plaintiffs that they would protect the Trade Secrets pursuant to the Employment Agreements when they never intended to abide by the Employment Agreements and (2) breaching an express duty to maintain the secrecy of the Trade Secrets.

63. Defendants' conduct in this manner was both willful and malicious.

64. As a direct result of Defendants' misappropriation of Plaintiffs' Trade Secrets, Plaintiffs have suffered and continue to suffer significant damages in an amount to be proven at trial, including but not limited to:

   a. Loss of revenue;
   b. Loss of profits;
   c. Loss of business
   d. Loss of good will;
   e. Other direct and consequential damages

## SECOND COUNT
(BREACH OF EMPLOYMENT AGREEMENTS)

65. Plaintiffs incorporate the above paragraph by reference.

66. Plaintiffs and Defendants entered into the Employment Agreements attached as Exhibits A, B, C and D.

67. Defendants did not perform their employment duties as specified in the Employment Agreements, including but not limited to:

   a. No placements files/new accounts requested from Clients for more than 6 months;
   b. Significant drop in the number of demand letters;
   c. Little follow-up on A/R;
   d. Termination by CHS as result of staff working accounts inside the required 180-day window;
   e. Months of mail unopened, unprocessed or not scanned making it difficult to reconcile accounts or follow-up;
   f. Client data sitting for months without action;
   g. Failure to optimize revenue;
   h. Failure to competently perform core duties of employment, including ensuring the mail is received by the carrier, follow-up is conducted, and payments are made.

68. Defendants further breached the Employment Agreements by misappropriating Trade Secrets and disclosing proprietary and confidential information, as set forth above.

69. As a direct and proximate result of Defendants' breaches of contract, Plaintiffs have incurred and will continue to incur substantial damages, including but not limited to:

   a. Loss of revenue;
   b. Loss of profits;
   c. Loss of business
   d. Loss of good will;
   e. Other direct and consequential damages

**THIRD COUNT**
(TORTIOUS INTERFERENCE)

70. Plaintiffs incorporate the above paragraph by reference.

71. At all relevant times, Plaintiffs had valuable business relationships with existing customers throughout the United States, and a reasonable expectation that those relationships will continue but for unlawful conduct by Defendants.

72. At all relevant times, Plaintiffs has pursued and developed potential business relationships with other, prospective customers in the United States, and have a reasonable expectation that said business relationships will develop but for unlawful conduct by Defendants.

73. Defendants' conduct, as alleged herein, comprises the intentional doing of per se wrongful acts, and/or the intentional doing of other acts with malice, for the purpose of invading and interfering with Plaintiffs existing and prospective business relationships.

74. Upon information and belief, Defendants' conduct has interfered with Defendants' existing and prospective business relationships.

75. Defendants' conduct has resulted and will result in monetary damage to Plaintiffs, in the form of lost business, loss of customers and goodwill, damage to business reputation, the unjust enrichment of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor granting the following relief:

1. Injunctive relief requiring Defendants to return any and all documents containing Trade Secrets of Plaintiff.

2. Compensatory damages for actual loss caused by Defendants' misappropriation of Plaintiff's Trade Secrets to the fullest extent permitted by law;

3. The disgorgement of Defendants' profits accrued as a result of the misappropriation of Plaintiff's Trade Secrets to the fullest extent permitted by law;

    4.    Exemplary damages for Defendants' willful and malicious misappropriation of Plaintiff's Trade Secrets to the fullest extent permitted by law;

    5.    Compensatory damages for Defendants' breach of contract to the fullest extent permitted by law;

    6.    Compensatory and exemplary damages for Defendants' tortious interference to the fullest extent permitted by law;

    7.    Plaintiffs' attorneys' fees and costs;

    8.    Pre-judgment and post-judgment interest;

    9.    Such other relief this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues.

Respectfully submitted,

/s/David M. Zack
David M. Zack (Fla. Bar. No. 90572)
**BLEVINS SANBORN JEZDIMIR ZACK PLC**
1842 Michigan Ave.
Detroit, MI 48216
p & f: (313) 338-9500
dzack@bsjzlaw.com

*Attorneys for Plaintiffs*

Dated: February 6, 2019